Dear Mr. Coudrain:
Our office is in receipt of an opinion request from you as to some questions that have arisen concerning the proper procedure for a citizen election to adopt an ordinance under the City of Hammond's Home Rule Charter.
The Hammond Home Rule Charter ("Charter") provides a method for the passage or repeal of ordinances in Section 6.01. Your letter asserts that, pursuant to Section 6.01 of the Charter, the City of Hammond has been presented with a petition for passage of an ordinance to eliminate electronic video bingo.[1] Your correspondence provides that the Council has approved the form of the petition, and informs that the proposers are in the process of obtaining the signatures requested under Section 6.01(2). Should the required signatures be received by the City, you have asked our office to give an opinion on the appropriate process for the calling of the election for consideration of the proposed ordinance.
More specifically, pursuant to a request by the Hammond City Council, your letter asks the following questions:
 (1) Whether it is necessary for the bond commission to approve an election to adopt the ordinance in question;
 (2) Your letter provides that, based on a review of the 2008 election schedule provided by the Louisiana Secretary of State, it is likely the City will be unable to *Page 2 
meet the requirement provided in Section 6-01(6) that the election take place within sixty days after the date of the public hearing, and asks whether it is legally permissible for the City to call the election on the next available election date under the Louisiana Secretary of State schedule rather than a single purpose special election within the sixty day time period; and
 (3) If the election is held on a primary or second party primary election date, whether the provisions of La.R.S. 18:1285(B)(1)(a) apply with respect to the seventy-one day notice requirement, rather than the sixty day election time frame set out in Section 6-01(6).
As an initial matter, the decision to permit bingo is a matter for the governing authority of each municipality. La.R.S. 4:706 provides, in pertinent part:
 A. The governing authority of each such municipality shall decide whether charitable raffles, bingo, and keno as provided for in this Chapter shall be permitted within the limits of the municipality.
 [. . .]
 D. For the purposes of an as used in this Section, the term "bingo" shall include "electronic video bingo."
Further, in La.R.S. 4:724, on the use of electronic or video bingo games, Section I provides that "Nothing in this Section shall be construed to restrict the authority of local governments to restrict or prohibit the conducting of video bingo."
In accordance with their authority under La.R.S. 4:706, it is our understanding that the Hammond City Council passed an ordinance to permit electronic video bingo in 2005. Pursuant to provisions in Hammond's Home Rule Charter, which is discussed in detail later in this opinion, there is a procedure available for the citizens to repeal this ordinance through an election initiated by a citizen petition. It should be emphasized that this procedure is only available to the citizens of Hammond pursuant to Section 6-01 of their Home Rule Charter. Accordingly, the application of this opinion is limited to the City of Hammond and any other public entity with a Home Rule Charter containing the same or very similar provisions.
Your first question asks whether it is necessary for the parish to get approval from the bond commission to hold an election for adopting the ordinance to prohibit electronic video bingo. La.R.S. 71:101 addresses the purpose of the Louisiana State Bond Commission. This statute provides, in Subsection (C): The commission is a constitutionally created body and, under constitutional and statutory authority, the state agencies and political subdivisions may not incur debt or levy taxes or hold elections therefor without the approval or the authorization of the commission. *Page 3 
A parish must get approval from the Louisiana State Bond Commission when they incur debt, levy taxes, or hold an election for the purpose of incurring debt or levying taxes. Nothing in the information provided suggests that the election will result in any debt or taxes levied for the Parish. In fact, Section 6-01 of the Hammond Home Rule Charter provides that:
 The electors of the City shall have the power, except as herein restricted, to propose to the council passage or repeal of ordinances and to vote on the question if the council refuses action. This power shall not extend to the proposing or repealing of ordinances making or reducing the appropriation of money, fixing the salaries of City officers or employees or authorizing the repeal or reduction of the levy of any taxes.
The people could not use this method for enacting or repealing an ordinance which would have the effect of making or reducing the appropriation of money, or authorizing the repeal or reduction of the levy of any taxes. Should the citizens gather the required signatures and those signatures are authenticated by the Council, if the Council chooses not to repeal the ordinance, the Hammond Home Rule Charter requires the issue be presented to the people in an election. Neither La.R.S. 71:101 nor the Hammond Home Rule Charter require approval of the bond commission for an election to adopt the ordinance in question.
Your other questions address the specific method for holding the election in accordance with the provisions of the applicable provisions of Hammond's Home Rule Charter. Section 6-01 of the Hammond Home Rule Charter describes the method in which the electors may exercise the power to propose an election to vote on the repeal of an ordinance:
 (1) The person or persons proposing the exercise of this power shall submit the proposal to the council which shall specify within thirty (30) days a form of petition for circulation in one or multiple copies as the proposer may desire. The petition shall contain the full text of the proposed ordinance.
 (2) Within sixty (60) days after the form of the petition shall have been specified, the person or persons circulating the petition shall obtain the signatures of at least fifteen (15) percent of the total registered voters of the City. There shall be noted after each signature on the petition the date signed and the address of the signer. Each person circulating a copy of the petition shall attach a sworn affidavit to it stating the number of signers and the fact that each signature was made in the presence of the circulator of the petition. *Page 4 
 (3) The signed petition shall be filed with the council within sixty (60) days of the specification of the form of the petition, and within thirty (30) days after the petition is filed the council shall order a canvass of the signatures thereon to determine the sufficiency and authenticity of the signatures. The council's canvass shall be completed within thirty (30) days. If the number of signatures is insufficient or the petition is deficient as to form or compliance with this section, the council shall notify the person or persons filing the petition of such insufficiency and allow thirty (30) days for filing of additional papers, at the end of which time the sufficiency or insufficiency of the petition shall be determined finally.
 (4) Within thirty (30) days after a petition shall have been certified as sufficient by the council, the council shall cause the proposed ordinance, or a summary thereof, to be published in the official journal of the City at least onece [once] together with a notice of the date, time and place when and where it will be given a public hearing and be considered for passage which notice shall appear at least ten (10) days prior to the time advertised for the hearing. At the time and place so advertised the council shall hold a public hearing. Subsequent to such hearing, the council shall either:
 a. Adopt the proposed ordinance submitted in an initiatory petition, without substantive amendments, or effect the repeal referred to by such petition, or
 b. Determine to submit the proposal to the electors.
 (5) If the council adopts an ordinance following the submission of an initiatory petition as provided above, it shall be treated in all respects in the same manner as other ordinances of the same kind adopted by the council.
 (6) If an initiatory ordinance is submitted to a vote of the electors as provided in Section 6-01 (4) above, the election shall take place within sixty (60) days after the date of the public hearing, preferably in an election already scheduled for other purposes, otherwise in a special election called by the council. The results shall be determined by a majority vote of the electors voting on the proposal.
 (7) If a majority of the qualified electors voting on a proposed initiative ordinance vote in its favor, it shall be considered adopted upon certification of the election results. If conflicting ordinances are approved at the same election, the one receiving the greatest number of affirmative votes shall prevail to the extent of such conflict.
 (8) If an ordinance is adopted by the electorate through the initiatory process it shall not be amended or repealed by council action during the term of the council in which it was adopted. The council, however, may *Page 5 
submit proposals amending or repealing such ordinances to a vote of the electors.
This process requires that the full text of the proposed ordinance be presented to the council, with a specified proposal of the form of petition. The person proposing the ordinance then has sixty days from the date the form of the petition was specified to obtain the signatures of at least fifteen percent of the total registered voters in the city and file the petition with the Council. The Council then has thirty days to determine the sufficiency and authenticity of the signatures. After the Council has determined its sufficiency, they will have thirty days to have the ordinance (or a summary of the ordinance) published in the official journal of the City with notice of when and where a public hearing will be held. The publication must occur at least ten days before the public hearing will be held. Subsequent to this hearing, the Council must decide whether they wish to adopt the proposed ordinance, effect the repeal referred to by such petition, or submit the proposal to the electors.
The Charter provides that the election must take place within sixty days of the date of the public hearing, "preferably in an election already scheduled for other purposes, otherwise in a special election called by the council." La.R.S. 18:402(F) addresses Dates of Primary and General Elections and provides that in the case of bond, tax, or other elections:
 Every bond, tax, or other election at which a proposition or question is to be submitted to the voters shall be held only on one of the following dates:
 (1) The second to last Saturday in October or the fourth Saturday after the second to last Saturday in October of 1983 and every fourth year thereafter.
 (2) The first Saturday in October or the first Tuesday after the first Monday in November of even-numbered years.
 (3) The first Saturday in April or the fourth Saturday after the first Saturday in April of any year or on the second or third Saturday in February or fourth Saturday after the second or third Saturday in February, as the case may be, during the presidential election year, if the statewide presidential preference primary election is scheduled on the second or third Saturday in February of the presidential election year; however, commencing in 1994 and every fourth year thereafter, the first Saturday in April shall not be applicable in a parish containing a municipality with a population of four hundred seventy-five thousand or more.
 (4) The third Saturday in October or the fourth Saturday after the third Saturday in October of 1985 and every fourth year thereafter. *Page 6 
 (5) The third Saturday in July of any year, which date, in addition to the other dates provided for in this Subsection, shall be exclusively for elections on bonds, taxes, and other propositions or questions and for no other kind of election, except for a special election called to fill a vacancy in the office of state legislator.
 (6) For a parish containing a municipality with a population of four hundred seventy-five thousand or more, the first Saturday in February or the fourth Saturday after the first Saturday in February in 1986 and every fourth year thereafter.
 (7) In case of an emergency, upon application to and approval by the State Bond Commission by two-thirds vote of its total membership, and with approval of the governor, the governing authority of a parish, of a municipality, or of a parish or city school board may conduct a bond or tax election on a Saturday which is not provided for in this Subsection.
Your letter asks whether it would be permissible for the city to avoid scheduling a special election, and to just wait until the next scheduled election. As the statute above provides, the Election Code provides specific dates for when an election at which a proposition or question is to be submitted to the voters. There is a conflict between the Election Code and the Hammond Home Rule Charter in this situation. According to La.R.S. 18:402(F), the first available date at which this issue could be submitted to the voters is the first Saturday in October. According to the Secretary of State schedule of elections, there is a Primary Election scheduled for September 6, 2008. From the information provided, these dates are after the sixty day guideline in the Home Rule Charter for presenting this proposed ordinance to the electors.
Article VI, Section 5 of the Louisiana Constitution allows a city to adopt a Home Rule Charter, as Hammond has done, and Subsection E of this provision addresses the structure and function of such a charter by providing:
 A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
Also of relevance is La.Const. Art. XI, § 1, which provides, "The legislature shall adopt an election code which shall provide for permanent registration of voters and for the conduct of all elections." The Home Rule Charter will govern unless it is inconsistent with the Louisiana Constitution. The Constitution provides that the Election Code governs the conduct of elections. Therefore, it is the opinion of this office that the *Page 7 
Election Code will supersede the provisions of the Home Rule Charter with regard to the scheduling of the submission of this issue to the voters.
In La. Atty. Gen. Op. No. 98-2, our office was of the opinion that when a date requirement from the election code was in conflict with a date requirement from a Home Rule Charter, the provisions of the charter that were in conflict with the election code must yield. See also La. Atty. Gen. Op. Nos. 77-7, 78-86 and 77-1372. Attorney General Opinions and Jurisprudence consistently find that the Louisiana Election Code prevails over local laws, ordinances, and charters.
Considering the above, the City of Hammond must comply with the Election Code with regard to the scheduling of this election, and not the Hammond Home Rule Charter. The first available date for scheduling such an election would be September 6, 2008, the date of a scheduled primary election.
Your letter asks our office to address what should happen in the event the election is held on a primary or second party primary election date, noting a conflict between the requirements of La.R.S. 18:1285(B)(1)(a) and Section 6-01. It is the opinion of this office, from the information you provided us, that the notice requirements of La.R.S. 18:1300(C) would apply, rather than La.R.S. 18:1285(B)(1)(a), since § 1300 is located in the Election Code under "Elections at Which a Proposition or Question is to Be Submitted to the Voters" and § 1285 is located in "Bond, Debt, and Tax Elections." La.R.S. 18:1300(C) provides, in pertinent part,
 When an election is called under the provisions of this Chapter, written notice of the election shall be transmitted to the secretary of state, the commissioner of elections, and each clerk of court and registrar of voters in the area affected by the election. If the election is to be held on a primary or second party primary election date, then such notice shall be received by the secretary of state on or before the seventy-first day prior to the primary or second party primary election.
If the election determining the repeal of the ordinance is to be held on the same day as a primary or secondary election, the Council must give notice to the Secretary of State seventy-one days prior to the election. As mentioned above, in the event of a conflict between the Election Code and the Home Rule Charter, the Charter must yield.
Because your opinion request involves the issue of Video Bingo, as defined in La.R.S. 4:724, we feel obligated to mention Act 630 of the 2008 Regular Session of the Louisiana Legislature, which amended La.R.S. 4:724. Act 630 appears to provide a grandfather provision for video bingo devices which have been approved by the Office of Charitable Gaming and placed in a location prior to August 15, 2008. Therefore, you should be aware that even if an election were held to repeal the City Council ordinance authorizing Video Bingo in the City of Hammond, and the proposition carried, the effect of the election would be subject to the new amendment to La.R.S. 4:724 and would *Page 8 
only remove the authorization for any future Video Bingo facilities. Pursuant to the amended statute, a repeal of the ordinance would not require the removal of either the Video Bingo outlets already in place or those for which licenses are applied prior to August 15, 2008.
In conclusion, from the information provided, in connection with a proposed ordinance in which no debt is incurred or tax is being levied, there is nothing that indicates it is necessary for the bond commission to approve an election to adopt the ordinance in question. Additionally, the Council must comply with the requirements set forth in the Election Code regarding election dates for submission of this issue to the electors. In the event the election coincides with a primary or second party primary election date, the City must comply with the notice requirements set forth in the Election Code.
We hope that this opinion has adequately addressed the legal issues that you have raised. If our office can be of further assistance, please do not hesitate to contact us.
 With best regards, JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: _____________________________ Emalie A. Boyce Assistant Attorney General
 JDC: EAB
[1] Please note that Act 630 of the 2008 Regular Session amends La.R.S. 4:724, relative to video bingo machines.